# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

FRANZ MULLER,
      Appellant,

      v.

DEPARTMENT OF THE INTERIOR,
      Agency.

DOCKET NUMBER
SF-0752-13-0151-I-2

DATE: February 13, 2015

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Stephanie L. Ayers</u>, Esquire, and <u>Thad M. Guyer</u>, Esquire, Medford, Oregon, for the appellant

<u>Chandra R. Postma</u>, Esquire, Anchorage, Alaska, for the agency.

## BEFORE

Susan Tsui Grundmann, Chairman
Anne M. Wagner, Vice Chairman
Mark A. Robbins, Member

## FINAL ORDER

¶1       The appellant has filed a petition for review of the initial decision, which sustained his removal from service. Generally, we grant petitions such as this one only when: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

the erroneous application of the law to the facts of the case; the judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed.  *See* Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115).  After fully considering the filings in this appeal, and based on the following points and authorities, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review.  Therefore, we DENY the petition for review and AFFIRM the initial decision, which is now the Board's final decision.  5 C.F.R. § 1201.113(b).

¶2      The appellant held the position of Airplane Pilot (Law Enforcement) for the agency's Fish and Wildlife Service (FWS), in Cold Bay, Alaska.  MSPB Docket No. SF-0752-13-0151-I-1 (I-1), Initial Appeal File (IAF), Tab 4, Subtab 4 (Standard Form (SF) 50 documenting removal), Subtab 4k (position description).  Following a February 2010 accident involving his piloting of an FWS plane, the agency's Office of Aviation Services (OAS) convened a Pilot Review Board (PRB) to determine what, if any, action to take regarding the appellant's pilot authorization card.[2]  *See, e.g.*, I-1, IAF, Tab 12 at 13-28 (PRB report).  The PRB considered the appellant's accident, as well as several other incidents where he had reportedly failed to follow agency-specific piloting policies.  *Id*.  Ultimately, the PRB recommended that the agency reinstate the appellant's pilot authorization card only if several conditions were met.  *Id*. at 13-14.  Among them, the PRB "strongly recommend[ed]" that the appellant be moved from his isolated position

---

[2] The appellant's position required that he hold both a pilot's license, issued by the Federal Aviation Administration (FAA), and a pilot authorization card, issued by the OAS, which was previously known as the Aviation Management Directorate.  *See* MSPB Docket No. SF-0752-13-0151-I-2 (I-2), IAF, Initial Decision (ID) at 2; I-1, IAF, Tab 4, Subtab 4k at 6 (relevant portion of the position description).

in Cold Bay to one where he could receive "adequate oversight and supervision from an aviation knowledgeable supervisor and [could] be mentored within a positive [agency] safety culture atmosphere." *Id.* at 14. The agency determined that it had no such positions available in the appellant's region (Alaska). I-1, IAF, Tab 4, Subtab 4g at 2. Therefore, the associate director of OAS declined to reinstate the appellant's pilot authorization card. I-1, IAF, Tab 4, Subtab 4f.

¶3 The agency removed the appellant for "Loss of [Agency] Pilot Authorization." I-1, IAF, Tab 4, Subtab 4a (decision letter), Subtab 4e (proposal letter). The appellant appealed his removal to the Board. I-1, IAF, Tab 1. After holding the requested hearing, the administrative judge sustained the appellant's removal. ID. The appellant has filed a petition for review.[3] I-2, Petition for Review (PFR) File, Tab 1. The agency has filed a response, PFR File, Tab 3, and the appellant has replied, PFR File, Tab 6.[4]

The administrative judge properly found that the agency met its burden of proving the charge.

¶4 On review, the appellant argues that the administrative judge erred in sustaining the charge that he lost his pilot authorization. PFR File, Tab 1 at 10-11, 18-19, 22-28, 31-32. We do not agree.

¶5 Generally, in an adverse action appeal, the agency must prove its charge by a preponderance of the evidence. 5 U.S.C. § 7701(c)(1)(B). A preponderance of the evidence is that degree of relevant evidence that a reasonable person,

---

[3] The appellant's petition did not contain any arguments as to the administrative judge's findings on the affirmative defense of age discrimination or nexus. Accordingly, we will not revisit or disturb the judge's well-reasoned analysis of those issues on review. *See* ID at 28-32.

[4] In part, the appellant's petition for review and reply improperly rely upon Board initial decisions for support. *See* PFR File, Tab 1 at 31-32 (citing "Steele v. DOI"), 36 (citing "Sullivan v. DOT"), Tab 6 at 10 n.3 (citing "Mital v. Dep't of Agric"). Because initial decisions are not precedential, we decline to consider them. *See* 5 C.F.R. § 1201.113.

considering the record as a whole, would accept as sufficient to find that a contested fact is more likely to be true than untrue.  5 C.F.R. § 1201.56(c)(2).

¶6        Here, the administrative judge determined that the agency met its burden of proof as to the charge by showing the following: (1) the appellant held a position that required a pilot authorization; (2) the agency revoked that authorization; and (3) the agency acted reasonably in revoking the authorization.  ID at 5-6; *see generally Adams v. Department of the Army*, 105 M.S.P.R. 50, ¶ 10 (2007) (when a charge consists of the employing agency's withdrawal or revocation of its certification or other approval of the employee's fitness or other qualifications to hold his position, the Board's authority generally extends to a review of the merits of that withdrawal or revocation), *aff'd*, 273 F. App'x 947 (Fed. Cir. 2008).  On review, the appellant does not dispute the first two elements, but presents arguments as to the third—whether the agency acted reasonably in revoking his pilot authorization card.  His arguments are not persuasive.

¶7        The appellant first asserts that because the administrative judge dismissed some of the incidents in the PRB report as unproven, he should have but failed to consider whether the remaining incidents[5] still warranted the PRB's recommendations, which ultimately resulted in the revocation of his pilot authorization card and removal for the same.  PFR File, Tab 1 at 10-11. However, the administrative judge specifically addressed this question and found that the proven incidents were sufficient bases for the PRB's recommendations. *See* ID at 5-6, 17-19.  Among other things, the administrative judge concluded that the agency established multiple instances of the appellant violating agency-specific flying policies.  ID at 17-18.  Therefore, we find that the

---

[5] The administrative judge found that the agency proved that the appellant: (1) violated agency policy by flying in "visual flight rules over-the-top" conditions on one occasion; (2) violated agency policy by flying over a body of water beyond gliding distance to shore on one occasion; (3) violated agency policy by using his personal plane for official flights on at least two occasions; (4) failed to understand carburetor heat; and (5) failed to take responsibility for his accident.  ID at 5-16.

administrative judge correctly found it reasonable for the PRB to conclude that it would help prevent further violations to have his pilot authorization contingent upon him being stationed in a location where he could be under direct supervision of an aviation-savvy manager and integrated into the agency's culture and policies. ID at 17-18.

¶8    The appellant next asserts that the administrative judge failed to consider evidence that he was a highly trained pilot with a vast array of experience. PFR File, Tab 1 at 18-19. We disagree. The administrative judge explicitly addressed the issue, concluding that while the appellant may have been "extremely well trained" as to flying generally, the agency had legitimate concerns as to his adherence to agency-specific flight policies. ID at 18.

¶9    The appellant also alleges that he reported far more specific and detailed bias in the PRB process than the administrative judge acknowledged. PFR File, Tab 1 at 22-25, 31-32. But again, the administrative judge adequately addressed this issue below. *See* ID at 18-19. The appellant's bias argument is premised upon an assertion that his FWS regional aviation manager tainted the PRB process. *See, e.g.*, PFR File, Tab 1 at 22-25; I-1, IAF, Tab 14 at 47 of 54. The administrative judge considered this argument, finding that the FWS regional aviation manager emailed a PRB member prior to the start of its inquiry and that this contact was less than ideal, but that it did not taint the process.[6] ID at 18-19. The administrative judge correctly reasoned that the PRB member provided testimony indicating that he was not influenced by the email, and the FWS regional aviation manager's views were hardly secret since he was later interviewed as part of the PRB process. *See* ID at 18-19. The contact between the appellant's supervisor and the prospective PRB member was relatively

---

[6] The sender asked if the recipient would be willing to serve on the PRB. I-1, IAF, Tab 14 at 47 of 54. In relevant portion, the message stated, "I have been involved in the investigation . . . and they do not want me to be on the board because I have already decided that he should not fly for us. We need an unbiased review." *Id*.

innocuous on its face, and it merely provided an early indication of what the supervisor was likely to discuss later, when the full PRB interviewed him. While the appellant would have us find that it tainted the entire PRB process, we are not convinced that this one off-hand comment is of consequence.

¶10        Finally, the appellant alleges that the PRB's recommendations were a "decisional sham that [were] not in any meaningful sense a recommendations [sic] for saving appellant's job." PFR File, Tab 1 at 25-28. He seems to suggest that the PRB should have offered different conditions on the reinstatement of his pilot authorization, such as remote mentoring, which would have allowed him to retain his isolated position in Cold Bay. *See id*. at 26-27. However, the appellant has failed to present any evidence that the PRB was tasked with saving his job. Moreover, the administrative judge addressed the viability of alternative remedial measures below, finding that the agency had legitimate reasons for rejecting each. *See* ID at 19-21. We agree with that determination. The alternative mentoring methods the appellant has suggested differ from those recommended by the PRB in that they would have either not allowed for a similar degree of supervision or they would have required a significant and otherwise unnecessary burden to the agency, such as the relocation of other employees.

¶11        In sum, we find that the appellant has failed to present any reason to disturb the administrative judge's conclusion that the agency proved his loss of agency pilot authorization. *See Broughton v. Department of Health & Human Services*, 33 M.S.P.R. 357, 359 (1987) (finding no reason to disturb the administrative judge's findings where the administrative judge considered the evidence as a whole, drew appropriate inferences, and made reasoned conclusions).

The appellant's argument that he was unfairly subjected to a PRB fails.

¶12        The appellant asserts, as he did below, that he was subjected to PRB review after just one accident, while other pilots had been involved in one or more

accidents without ever being subjected to a PRB. PFR File, Tab 1 at 28-31; I-1, IAF, Tab 35 at 23-25. We find no merit to the argument.

¶13    The administrative judge found that the PRB was convened not solely because of the February 2010 accident, but also because the investigation into that accident revealed that the appellant may have violated agency policy on other occasions. ID at 19. Citing testimony from agency officials, the administrative judge found that the accident played but a minor role in the PRB's review. ID at 19. The record supports this conclusion and the appellant has presented no evidence to the contrary. The administrative judge also found that, while the appellant had identified others who had similarly been involved in accidents, their circumstances were distinguishable. ID at 19. We agree with that finding.

¶14    The appellant's first comparator, D.S., was reportedly involved in three accidents without ever going before a PRB. *See* PFR File, Tab 1 at 28-29. However, the record does not establish that D.S. was at fault in those accidents, or that he engaged in a pattern of policy violations. *See id.*; Hearing Transcript (HT) at 85-90. The appellant's next comparator, R.K., was reportedly involved in one accident and he erred in moving the airplane after that accident, but he was not brought before a PRB. PFR File, Tab 1 at 29-30. Again, the record does not establish that R.K. engaged in a pattern of policy violations. *See id.*; HT at 90-93. Accordingly, neither is a meaningful comparator to the appellant, who was involved in an accident and engaged in a pattern of policy violations. The appellant also identified two other comparators, M.M. and H.P. PFR File, Tab 1 at 29-31. However, like the appellant, both M.M. and H.P. did appear before a PRB. *See id.*; HT at 194-202, 280. Therefore, they were treated the same as the appellant by being brought before the PRB.

¶15     If the appellant intends this argument to be construed as one of disparate penalty,[7] it still fails. Where, as here, all of the agency's charges are sustained, the agency's penalty determination is entitled to deference and should be reviewed only to determine whether it is within the parameters of reasonableness. *See Payne v. U.S. Postal Service*, 72 M.S.P.R. 646, 650 (1996). Among those factors the Board will review in determining the reasonableness of the penalty is its consistency with those imposed upon other employees for the same or similar offenses. *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 305-06 (1981). The agency's burden to prove consistency of penalties is triggered when there is enough similarity between both the nature of the misconduct and other factors to lead a reasonable person to conclude that the agency treated similarly-situated employees differently. *Boucher v. U.S. Postal Service*, 118 M.S.P.R. 640, ¶¶ 20, 24 (2012). Here, the record reflects that none of the employees identified by the appellant as comparators was engaged in similar policy violations or that any were similarly charged with losing their pilot authorization. *See generally Penland v. Department of the Interior*, 115 M.S.P.R. 474, ¶ 11 (2010) (finding removal a reasonable penalty where the agency charged an Airplane Pilot with loss of pilot authorization and the charge was sustained).

The administrative judge properly found that the appellant failed to meet his burden of proving whistleblower retaliation as an affirmative defense.

¶16     The administrative judge concluded that the appellant failed to meet his burden because he did not prove that any of his alleged disclosures were protected for purposes of whistleblower retaliation. ID at 21-28 (citing *Ryan v. Department of the Air Force*, 117 M.S.P.R. 362, ¶ 12 (2012)). On review, the

---

[7] Because the appellant has not claimed any sort of prohibited discrimination in connection with this claim, we have not considered his argument as one of disparate treatment. *See Lewis v. Department of Veterans Affairs*, 113 M.S.P.R. 657, ¶ 5 (2010) (an allegation that the agency treated an appellant disparately to another employee, without claiming prohibited discrimination, is an allegation of disparate penalties to be proven by the appellant, but it is not an affirmative defense).

appellant presents several arguments. He asserts that the administrative judge incorrectly applied the Whistleblower Protection Act (WPA), instead of the Whistleblower Protection Enhancement Act of 2012 (WPEA), PFR File, Tab 1 at 32-33; the administrative judge failed to consider his reports of maintenance issues immediately after his accident in 2010, *id*. at 19-22, and erred in finding that some of his disclosures were not protected, *id*. at 19-22, 33-37; and there was clear retaliatory animus in the PRB process due to his whistleblowing, *id*. at 22-24. We find no merit to these arguments.

¶17    In an adverse action appeal, such as this, an appellant's claim of whistleblower reprisal is treated as an affirmative defense. *Shannon v. Department of Veterans Affairs*, 121 M.S.P.R. 221, ¶ 21 (2014). Once the agency proves its adverse action case by a preponderance of the evidence, the appellant must show by preponderant evidence that he engaged in whistleblowing activity by making a protected disclosure under 5 U.S.C. § 2302(b)(8) and that the disclosure was a contributing factor in the agency's personnel action. *Shannon*, 121 M.S.P.R. 221, ¶ 21. A protected disclosure is a disclosure of information that the appellant reasonably believes evidences any violation of any law, rule, or regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety. 5 U.S.C. § 2302(b)(8)(A); *Shannon*, 121 M.S.P.R. 221, ¶ 22.

¶18    Here, the appellant first asserts that the administrative judge incorrectly applied the WPA, instead of the WPEA, concerning disclosures made in the normal course of duty. PFR File, Tab 1 at 32-33. However, this assertion is incorrect. ID at 22-23; *see generally Day v. Department of Homeland Security*, 119 M.S.P.R. 589, ¶¶ 12, 26 (2013) (finding that the WPEA simply clarified the term "disclosure" in the WPA). As properly noted by the administrative judge, the WPEA clarified that a disclosure made during an employee's normal course of duties is not excluded from whistleblower protections. *See* ID at 22-23; *see also* 5 U.S.C. § 2302(f)(2). The administrative

judge went on to state that the appellant had the burden of showing that the agency took the action in reprisal for his disclosure. ID at 23. This is consistent with Board precedent issued after the issuance of the initial decision in this case. *See Benton-Flores v. Department of Defense*, 121 M.S.P.R. 428, ¶ 15 (2014).[8]

¶19    The disclosures the appellant made in the normal course of duty were reports of maintenance issues before his accident with the agency aircraft he flew. *See* ID at 22. However, as the administrative judge noted, the record contains no evidence that he reported these issues outside the normal channels for doing so, and no evidence that these disclosures had any bearing on his removal. *See* ID at 22. Instead, the record included testimony from agency officials emphasizing that it was crucial for pilots to identify and report potential safety problems. *See* ID at 22. Hence, the administrative judge found that the appellant failed to meet his burden regarding his pre-accident disclosures of maintenance issues made in the normal course of duty. We agree.

¶20    Next, although the appellant asserts that the administrative judge failed to consider his claim of reprisal for his reports of maintenance issues immediately after his accident in 2010, PFR File, Tab 1 at 19-22, the initial decision reflects otherwise, ID at 24. Accordingly, we proceed to whether the judge rightly found that these were not protected disclosures.

¶21    The appellant asserts that the administrative judge erred in finding that his "disclosures of lack of airworthiness to investigators and officials outside his

---

[8] 5 U.S.C. § 2302(f)(1) sets out several types of disclosures that shall not be excluded from the whistleblower protections of 5 U.S.C. § 2302(b)(8). By contrast, 5 U.S.C. § 2302(f)(2) separately addresses disclosures made during the normal course of duty, to include additional language indicating that such a disclosure shall not be excluded from the whistleblower protections of 5 U.S.C. § 2302(b)(8) "if any employee who has authority to take, direct others to take, recommend, or approve any personnel action with respect to the employee making the disclosure, took, failed to take, or threatened to take or fail to take a personnel action with respect to that employee in reprisal for the disclosure." Disclosures made in the course of duty are protected only if the employee also proves that the agency took the personnel action with an improper retaliatory motive. *Benton-Flores*, 121 M.S.P.R. 428, ¶ 15.

chain of command" were not protected. PFR File, Tab 1 at 34-37. Although the appellant failed to cite specific disclosures in his petition, we have construed his argument as implicating his February 18, 2010 letter and his March 12, 2010 email, both of which expressed concerns about the crashed airplane's brakes and carburetor, *see* I-1, IAF, Tab 14 at 6-8, 12-17 of 54, as well as the June 28, 2010 email, in which he questions the absence of an aircraft maintenance log documenting that airplane's inspections, *see* I-1, IAF, Tab 16 at 27 of 74.[9] He seems to argue that the February 18 and March 12, 2010 correspondences were protected because the information related to a substantial and specific danger to public health or safety, and/or gross mismanagement, while the June 28, 2010 correspondence was protected because it concerned the violation of a law, rule, or regulation. *See* PFR File, Tab 1 at 34-36. We disagree.

¶22      A protected disclosure is one that the appellant reasonably believed to evidence gross mismanagement, a gross waste of funds, an abuse of authority, a substantial and specific danger to public health or safety, or any violation of a law, rule, or regulation. 5 U.S.C. § 2302(b)(8). The test for determining if an employee's belief concerning such a matter is reasonable is as follows: "could a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the employee reasonably conclude that the actions of the government evidence [the wrongdoing in question]?" *Lachance v. White*, 174 F.3d 1378, 1381 (Fed. Cir. 1999).

¶23      In determining whether a disclosure is protected because of a reasonable belief that it evidenced a substantial and specific danger to public health or safety, the Board considers factors such as (1) the likelihood of harm resulting

---

[9] Below, the administrative judge also considered several other disclosures, finding none protected. ID at 22-28. However, the appellant's petition only directs our attention to "disclosures of lack of airworthiness to investigators and officials outside his chain of command." PFR File, Tab 1 at 34-37. Accordingly, we will not revisit the administrative judge's well-reasoned findings as to any alleged disclosures falling outside that purview.

from the danger, (2) the imminence of the potential harm, and (3) the nature of the potential harm. *Parikh v. Department of Veterans Affairs*, [116 M.S.P.R. 197](), ¶ 14 (2011). Alternatively, gross mismanagement is action or inaction which creates a substantial risk of significant adverse impact upon the agency's ability to accomplish its mission. *Francis v. Department of Air Force*, [120 M.S.P.R. 138](), ¶ 12 (2013).

¶24     Here, the appellant crashed the agency's airplane on February 11, 2010, and he submitted correspondence to agency officials, expressing concerns about that plane's brakes and carburetor, on February 18, 2010, and March 12, 2010. I-1, IAF, Tab 14 at 6-8, 12-17 of 54. However, the record reveals that the accident caused extensive damage to the airplane, such that it would not be in service anytime in the near future. *See, e.g.*, *id.* at 3-4 of 54 (March 3, 2010 article about the accident with photos), 12 of 54 (letter from the appellant describing the damaged portions of the plane as including the wings, cowling, spinner, and propeller). Consequently, the administrative judge correctly determined that the appellant failed to prove that he had a reasonable belief that his post-accident maintenance disclosures were protected. *See* ID at 24. The appellant's February 18, 2010 and March 12, 2010 correspondences did not disclose an ongoing threat to safety, nor did either identify gross mismanagement. *See* ID at 24; *cf. Parikh*, [116 M.S.P.R. 197](), ¶¶ 12, 15 (finding a disclosure protected where the appellant reasonably believed that he disclosed systematic problems of untimely and inadequate patient care that were likely to result in severe harm); *see generally White v. Department of the Air Force*, [95 M.S.P.R. 1](), ¶¶ 38-40 (2003) (finding that a disclosure, alleging that the agency was requiring adherence to unworkable and untenable standards, was not protected as a gross mismanagement disclosure), *aff'd*, [391 F.3d 1377]() (Fed. Cir. 2004).

¶25     Similarly, the appellant's June 28, 2010 email questioning whether maintenance logs should be kept in agency airplanes was not protected. *See* ID at 25-26; I-1, IAF, Tab 16 at 27 of 74. Below, and on review, the appellant has

suggested that aircraft operators are required to have ready-access to maintenance documentation. *E.g.*, PFR File, Tab 1 at 34. As the administrative judge noted, the appellant made this assertion but failed to cite any law, rule, or regulation requiring that the agency keep maintenance logs in its airplanes. *See* ID at 25. Moreover, it is evident that the appellant knew that the documentation was readily available, albeit in a location he may not have preferred. *See* I-1, IAF, Tab 16 at 27 of 74 (the appellant's June 28, 2010 email questioning whether the documentation should be in the airplane, and his supervisor's response indicating that the log books were kept at a central location, where the appellant knew that he could review them as needed). Therefore, we agree with the administrative judge's conclusion that the appellant did not have a reasonable belief that the June 28, 2010 email disclosed any violation of law, rule, or regulation.

¶26    Finally, because the appellant failed to show that he made any protected disclosure, we need not address his final argument, alleging clear retaliatory animus in the PRB process due to his whistleblowing. *See* PFR File, Tab 1 at 22-24; *see also Clark v. Department of Veterans Affairs*, 121 M.S.P.R. 154, ¶ 19 n.10 (2014) (an appellant must first establish a prima facie case that a protected disclosure was a contributing factor to a personnel action; otherwise the Board may not proceed to whether the agency meets its burden of showing that it would have taken the same action in the absence of the disclosure).

### NOTICE TO THE APPELLANT REGARDING
### YOUR FURTHER REVIEW RIGHTS

You have the right to request review of this final decision. There are several options for further review set forth in the paragraphs below. You may choose only one of these options, and once you elect to pursue one of the avenues of review set forth below, you may be precluded from pursuing any other avenue of review.

Discrimination Claims:  Administrative Review

You may request review of this final decision on your discrimination claims by the Equal Employment Opportunity Commission (EEOC).  *See* Title 5 of the United States Code, section 7702(b)(1) (5 U.S.C. § 7702(b)(1)).  If you submit your request by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit your request via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, NE
Suite 5SW12G
Washington, D.C. 20507

You should send your request to EEOC no later than 30 calendar days after your receipt of this order. If you have a representative in this case, and your representative receives this order before you do, then you must file with EEOC no later than 30 calendar days after receipt by your representative.  If you choose to file, be very careful to file on time.

Discrimination and Other Claims:  Judicial Action

If you do not request EEOC to review this final decision on your discrimination claims, you may file a civil action against the agency on both your discrimination claims and your other claims in an appropriate United States district court.  *See* 5 U.S.C. § 7703(b)(2).  You must file your civil action with the district court no later than 30 calendar days after your receipt of this order.  If you have a representative in this case, and your representative receives this order before you do, then you must file with the district court no later than 30 calendar days after receipt by your representative.  If you choose to file, be very careful to

file on time. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Other Claims: Judicial Review

If you do not want to request review of this final decision concerning your discrimination claims, but you do want to request review of the Board's decision without regard to your discrimination claims, you may request review of this final decision on the other issues in your appeal by the United States Court of Appeals for the Federal Circuit.

The court must receive your request for review no later than 60 calendar days after the date of this order. *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27, 2012). If you choose to file, be very careful to file on time. The court has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed. *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you want to request review of the Board's decision concerning your claims of prohibited personnel practices described in 5 U.S.C. § 2302(b)(8), (b)(9)(A)(i), (b)(9)(B), (b)(9)(C), or (b)(9)(D), but you do not want to challenge the Board's disposition of any other claims of prohibited personnel practices, you may request review of this final decision by the United States Court of Appeals for the Federal Circuit or by any court of appeals of competent jurisdiction. The court of appeals must receive your petition for review within 60 days after the date of this order. *See* 5 U.S.C. § 7703(b)(1)(B) (as rev. eff. Dec. 27, 2012). If you choose to file, be very careful to file on time.

If you need further information about your right to appeal this decision to court, you should refer to the federal law that gives you this right. It is found in

Title 5 of the United States Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012). You may read this law as well as other sections of the United States Code, at our website, http://www.mspb.gov/appeals/uscode/htm. Additional information about the United States Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11. Additional information about other courts of appeals can be found at their respective websites, which can be accessed through http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

If you are interested in securing pro bono representation for an appeal to the United States Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for a list of attorneys who have expressed interest in providing pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Merit Systems Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.


FOR THE BOARD: _____
William D. Spencer
Clerk of the Board

Washington, D.C.